[Civ. No. 11667. First Dist., Div. Two.—April 14, 1941.]

MABLE SMITH, Appellant, v. CHARLES A. BLISS, as Executor, etc., Respondent.

Sherman & Peters for Appellant.

Joseph C. Prior for Respondent.

STURTEVANT, J.—To the plaintiff's second amended complaint the defendant interposed a demurrer. The demurrer was sustained without leave to amend and from the judgment entered thereon the plaintiff has appealed. Plaintiff's pleading purported to state four different causes of action.

*First Cause of Action.*

In her brief the plaintiff states that the first cause of action is one in which she seeks to recover the unpaid balance due on a contract for personal services. The first cause of action is very long but the following are its principal allegations. Prior to 1932 A. F. Coffin and Lulu H. Coffin were husband and wife residing in Oakland. Mrs. Coffin had an intimate friend, Irene Martin, for whom she had done and was continuing to do many kind acts. In the latter part of that year Mrs. Coffin approached the plaintiff asking the latter to give up her employment in the millinery business and " . . . devote all her working time to her (Mrs. Coffin's) interest and welfare and to be her lifelong friend. . . . " Mrs. Coffin stated that she would compensate the plaintiff well, would give as bountifully to her as to Irene Martin, and that she would accomplish these things by creating joint bank accounts for plaintiff, or by making provision for plaintiff in her will. Plaintiff accepted said proposition and continued to act thereon until the date of Mrs. Coffin's death. Mr. Coffin died testate on March 5, 1935. Among others he named his wife as one of his legatees. Mr. Harris was appointed executor of that will and proceeded with the probate proceedings. Later Mrs. Coffin stated to Irene Martin and to this plaintiff that she would make only a part provision for them in her will and the greater part of the provision she would create by the said joint bank accounts. In carrying out that

174

statement she created joint bank accounts in favor of Irene Martin in the sum of $62,463.66. She also created joint bank accounts in favor of herself and the plaintiff in the sum of $10,931. Among others was account No. 47534 in the Crocker First National Bank of San Francisco. That account was opened September 1, 1936, and Mrs. Coffin deposited $5 therein. The bank book was inserted in an envelope and was handed over to the decedent. About that time it transpired that Mrs. Coffin's legacy amounted to $27,058.03 but the same had not been declared by an order of distribution. From time to time Mrs. Coffin referred to said legacy and stated to the plaintiff that when it was collected the joint bank account number 47534 would be increased to make it $20,000. In August, 1937, Mrs. Coffin was in poor health and was advised that she must undergo an operation. On August 30, 1937, she executed a formal will. On August 31, 1937, she was informed by her doctor that she must immediately undergo the operation. On the latter day she produced the envelope containing the bank book 47534 and, in the presence of the plaintiff, Mrs. Coffin wrote thereon, ''Make it Joint Tenancy 20,000—Aug. 31/1937 Mrs. A. F. Coffin.'' Having written said words on said envelope Mrs. Coffin handed the envelope and contents to the plaintiff stating that Mrs. Coffin and the executor of her husband's estate would be trustees until the money was deposited in the joint bank account and that if Mrs. Coffin did not survive the operation, and if the check was received from her husband's executor after she died, then the plaintiff was to take said writing to Mrs. Coffin's executor (Mr. Bliss) and he would see that the plaintiff received the said $20,000. Mrs. Coffin died September 8, 1937. Down to the date of her death she had not made joint bank accounts with plaintiff in the sum of $62,-463.66. In her will Mrs. Coffin did not bequeath to the plaintiff a sum equal to the amount of her promise. She had created joint bank accounts in favor of the plaintiff in the sum of $10,417.13, had made gifts to her in the sum of $1,000, but had failed to the extent of $52,043.53 to keep her promise. After the date of the death of Mrs. Coffin the plaintiff learned of the discrepancy. On October 14, 1937, Mr. Bliss was appointed executor of the will of Mrs. Coffin. In due time the plaintiff filed her claim against the estate. That claim was made out in accordance with the alleged promises herein-

above set forth. Her claim was denied on May 1, 1938, and thereupon she commenced this action. It is further alleged that she made a demand on Mr. Bliss to pay $19,995 into the joint bank account but he refused.

The foregoing is clearly an attempt to plead a contract of employment. By its express terms the contract was to continue from the date it was made in 1932 down to the date of the death of Mrs. Coffin. The amount of the compensation depended on the amount of the accounts in favor of Irene Martin. Until the date of Mrs. Coffin's death that amount could not be known. Hence the amount to be put in a joint bank account in favor of the plaintiff, or the amount to insert in a will, could not be known. Obviously said contract could not be performed during the lifetime of the promisor (Mrs. Coffin). It was therefore clearly within the statute of frauds. (Code Civ. Proc., sec. 1973, subd. 6; *Hagan* v. *McNary*, 170 Cal. 141 [148 Pac. 937, L. R. A. 1915E, 652].) ■ But the plaintiff argues the defendant is estopped from pleading the statute of frauds. (*Seymour* v. *Oelrichs*, 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154].) That authority is not applicable in the instant case. The fraud on which the estoppel rested in that case was the promise to make a written contract and the subsequent failure to carry out that promise (pp. 799, 800). It follows that the first cause of action failed to state facts sufficient.

*Second Cause of Action.*

■ By a direct allegation to that effect the plaintiff adopts all of the allegations in the first cause of action and then alleges as follows. That on the 31st day of August, 1937, Mrs. Coffin, in consideration of services rendered, created a trust in favor of this plaintiff and " . . . that the said Mrs. Coffin declared her intention by her statements, instructions, declarations, and other acts, and by the writing hereinabove alleged and set forth. . . . " The *corpus* of the trust was to be $20,000 " . . . then in the possession of the executor of her husband's estate. . . . " Mrs. Coffin would act as trustee during her life, Mr. Bliss would act as trustee thereafter. During her life and prior to obtaining actual physical possession of the said money, Mrs. Coffin retained control as trustee for herself and the plaintiff. Later Mr. Bliss received the legacy from the estate of Mr. Coffin. The plaintiff

has never received any part. Of the moneys received from the estate of Mr. Coffin $20,000 was vested and impressed with said trust in favor of this plaintiff. This defendant received said moneys so impressed with said trust and now wrongfully refuses to pay it over to this plaintiff.

Taking up all of the allegations of the first cause of action, together with the allegations of the second cause of action, it appears at once that no $20,000, or any other sum, was segregated or designated as the *corpus* of the trust, or was at any time in the possession of Mrs. Coffin. Assuming that the plaintiff is discussing funds to be received from the estate of Mr. Coffin, it is equally clear that such moneys were never received during the life of Mrs. Coffin. Moreover it is clear that there is not a word to the effect that Mrs. Coffin, either orally or in writing, made any transfer impounding any funds whatever in a trust or assigned her rights in any moneys in favor of anyone as the nominal trustee thereof. Conceding at once that a valid trust may be created as to personal property (*Booth* v. *Oakland Bank of Savings,* 122 Cal. 19 [54 Pac. 370]), the facts in the instant case do not justify us in applying that rule. (*Chard* v. *O'Connell,* 7 Cal. (2d) 663 [62 Pac. (2d) 369].) To constitute a valid enforceable trust the declaration thereof should show ''1. An intention on the part of the trustor to create a trust, and, 2. The subject, purpose, and beneficiary of the trust.'' (Civ. Code, sec. 2221.) The allegations are insufficient to show an intention to create a trust. The allegations show an intention to create a joint bank account, but a failure to do so. To constitute anyone a trustee there must be a showing that such trustee accepted the trust. (Civ. Code, sec. 2222.) But there is no allegation that anyone, having possession of the subject matter, consented to act as trustee during the life of Mrs. Coffin or afterwards. Giving all of the allegations the fullest meaning to which they are entitled, there was no trust created. (*Molera* v. *Cooper,* 173 Cal. 259, 260–262 [160 Pac. 231].) The memorandum dated August 31, 1937, certainly had as much force the day it was written as it had after the death of Mrs. Coffin. ▪ However it must be conceded at once that said memorandum was of no force or effect as a draft or an assignment and binding on Mr. Harris as executor of the estate of Mrs. Coffin, nor, after the death of Mrs. Coffin, did it have such force or effect on Mr. Bliss who

had been appointed executor of her will. To whomever that memorandum was addressed, in as far as it purported to create an agency, such agency terminated the moment Mrs. Coffin died. (Civ. Code, sec. 2356; 2 Am. Jur., p. 52.)

*Third Cause of Action.*

The plaintiff next contends a constructive trust was created in her favor. Again she realleges all of the foregoing facts. Continuing she alleges that on the 31st day of August, 1937, Mr. Harris, as executor of the estate of A. F. Coffin, deceased, held a legacy in the sum of $27,058.03, payable to Mrs. Coffin. That "said executor Harris was holding said money subject to court order of distribution". On the date last mentioned " . . . Mrs. Coffin granted, conveyed, transferred and assigned to the plaintiff a joint tenancy interest with right of survivorship in and to $20,000 of the said money in the possession and control of Mr. Harris as executor of her deceased husband's estate". Mrs. Coffin promised that if she survived the operation when the $20,000 was received that she would deposit the same in account No. 47534 in the Crocker Bank and if she did not survive then and in that event Mr. Bliss, her executor, would make the deposit. On the 17th day of November, 1937, the executor of the estate of Mr. Coffin paid $20,000 to the defendant who ever since has held the same for this plaintiff as survivor in the joint tenancy account. The plaintiff thereafter demanded of the defendant that he pay said moneys to her, but he refused. The plaintiff contends the foregoing facts showed a constructive trust. We think not. A constructive trust is one included among those classed in our statutes as involuntary trusts. (*Fulton* v. *Jansen*, 99 Cal. 587, 590 [34 Pac. 331].) Involuntary trusts arise under such facts as are enumerated in Civil Code, section 2224. But in the cause of action before us there is no fact alleged showing that this defendant has gained " . . . a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act. . . . "

Furthermore the facts show that plaintiff had a remedy at law to sue for compensation. Under such facts equity will not take jurisdiction. (*De Mattos* v. *McGovern*, 25 Cal. App. (2d) 429 [77 Pac. (2d) 522].)

*Fourth Cause of Action.*

As a fourth cause of action the plaintiff sets forth a count in *quantum meruit* for services rendered. She repeats

all of the foregoing allegations. Continuing she alleges that from October 1, 1932, down to the date of the death of Mrs. Coffin she fully performed her contract to render services. She alleges that Mrs. Coffin agreed to pay therefor an amount equal to the sums Mrs. Coffin paid to Irene Martin. Again she alleges that her services were reasonably worth the sum of $100 per month. She further alleges that Mrs. Coffin failed to pay her the sum of $52,046.53, the balance that was payable to her under the contract with Mrs. Coffin.

At $100 per month during the period of service there would have accrued and been payable the sum of $6,700. But it will be remembered that the plaintiff admits she has been paid a sum in excess of $10,417.13. It follows that she has been paid more than her services were reasonably worth and that she is not entitled to claim any further sum in a cause of action founded upon *quantum meruit*. Under this cause of action the special agreement made by the parties as to the value of the services is not enforceable as such. ▆ The amount of relief that may be obtained is the reasonable value of the services rendered and not the agreed value. (*De Mattos* v. *McGovern, supra.*)

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.