[Civ. No. 19956.   Second Dist., Div. Two.   Feb. 17, 1954.]

CHARLES H. PALMER, SR., et al., Appellants, v. HETTIE QUEENS PHILLIPS et al., Respondents.

292

Edwin C. Boehler and A. T. Folsom for Appellants.

No appearance for Respondents.

FOX, J.—Plaintiffs appeal from a judgment of dismissal for failure of the amended complaint to state a cause of action.

Plaintiffs initiated a suit in equity against the heirs of Mary Virginia Jones, in which they sought quasi-specific performance of an alleged oral agreement by Mary Virginia Jones to make a will leaving to plaintiffs all property she owned at the time of her death, and to impress a trust upon the property left by Mrs. Jones, who died intestate, for the use and benefit of plaintiffs. The public administrator, originally made a party defendant, was dismissed upon the ground of improper joinder. All of the other defendants, who were alleged, upon information and belief, to be the sole heirs-at-law residing outside of California, at places unknown to plaintiffs, were served by publication. No appearance having been made by any of the defendants, their defaults were duly entered. Upon the hearing on the matter the court, having considered the allegations of the complaint, concluded that it was insufficient to state a cause of action, and entered

a judgment dismissing the suit. Subsequently, in order to rectify a clerical error, a corrected judgment was entered *nunc pro tunc* as of March 6, 1953, the date of the original judgment.

The sole issue presented is whether the amended complaint sufficiently states a cause of action against the defendants.

So far as is here material, the amended complaint recites that Harry Jones and his wife Mary, both residents of Los Angeles County, died intestate in said county. Harry's death occurred on or about November 23, 1950; Mary passed away on or about March 29, 1952. Mary's estate, consisting of real property worth approximately $7,000 and personal property of the value of $2,712, is being administered by the public administrator. It is alleged that neither Harry nor Mary had any living ancestors or descendants at the time they died. Mary's only known relations are two sisters allegedly living outside California, whose exact addresses are unknown to plaintiffs. Harry had no brothers or sisters. (Mary's sisters are named as defendants; other possible heirs-at-law of Mary and Harry are joined as defendants under fictitious name designations.)

The complaint alleges that in about April, 1946, plaintiffs Charles H. Palmer, Sr., and his wife Myrtle entered into an oral agreement with Harry and Mary Jones, pursuant to a proposal made by the Joneses, to the effect that if the said plaintiffs would, during the remainder of the lives of Harry and Mary, oversee and care for their business matters, advise them, keep their property in repair and in rentable condition, provide transportation, companionship and personal care as needed, render services in case of illness, look after their general welfare and give them such attention as dutiful children give their parents, "then upon the death of both the said Harry Jones and his said wife they would leave a will under the terms of which all of the property owned by the survivor at death would be given and distributed to plaintiffs." It is alleged that after Harry's death Mary reaffirmed the agreement, pursuant to which, during the entire period from the time of the original agreement until Mary's death, plaintiffs performed the services and obligations therein bargained for. The complaint states that Harry was ill a long time prior to his death, and required constant care, while Mary could not read, could write only her name, and for some months prior to her death was very forgetful, making it necessary for plaintiffs to look after her daily.

The complaint contains a catalogue of the services, among others, which plaintiffs allege they performed in fulfillment of their part of the agreement. We quote them as follows: "Advise and assist the said Mary Virginia Jones and her said husband in business matters; (2) Keep rental cabins rented; (3) Collect rents; and keep books and records; (4) Keep lawns mowed and yards in good condition; (5) Make necessary repairs on rental units, and Jones residence; (6) Pay taxes and insurance premiums; (7) Give advice and counsel in personal matters; (8) Furnish transportation by auto to the said parties, and especially to a greater extent after the death of Harry Jones; taking widow to work in evening; (9) Assist with shopping for merchandise needed by the said Mary Virginia Jones, watching to see that she was not cheated; (10) Nurse and care for and prepare meals for said Mary Virginia Jones when ill and do her laundry; (11) Furnish continual companionship, afternoons, evenings, Saturdays and Sundays, for Mrs. Jones (as she complained of lonesomeness, especially after the death of her husband); (12) Go on various errands; (13) Take the said Mary Virginia Jones on automobile trips; (14) They made themselves available at all times to care for, wait upon, help and advise said Harry Jones and wife; and especially said widow Mary Virginia Jones after the death of her said husband, both as to business and personal matters; and to furnish her with companionship and enjoyment."

Plaintiffs next allege that in reliance upon the agreement, they "changed their own mode of life and denied themselves outside pleasures and enjoyment in order to continually concern themselves with the welfare of the decedents. . . ." But despite their faithful compliance with the terms of the oral agreement, they allege that neither Harry nor Mary ever executed any will or instrument under which they would receive any portion of the property owned by the survivor at the time of death. Claiming to be entitled to receive from Mary's estate all the residue of her property after payment of claims and expenses of administration, plaintiffs pray for quasi-specific performance of the oral agreement to leave the Jones property to them upon the death of the survivor and seek to establish that Mary's heirs hold title to the estate property distributable to them in trust for the plaintiffs.

The complaint in the instant case directly and affirmatively alleges that the contract between the parties or the devise of property by will was never reduced to writing, but rests

solely in parol. An oral agreement of this nature is "invalid" under the statute of frauds. (Civ. Code, § 1624, subd. 6; Code Civ. Proc., § 1973, subd. 6.) ▮ Under such circumstances, in order to state a cause of action for quasi-specific performance, plaintiffs were required to plead not only such facts as would prima facie entitle them to specific performance of the agreement, but also such other facts as would be sufficient to lift the oral contract out of the clearly appearing bar of the statute. (*Loper* v. *Flynn*, 72 Cal.App.2d 619, 622 [165 P.2d 256].) ▮ This latter element is satisfied where a plaintiff pleads facts which bring into play against defendants the principle of estoppel to assert the statute of frauds. (*Monarco* v. *Lo Greco*, 35 Cal.2d 621, 623-624 [220 P.2d 737].) ▮ "There can be no estoppel unless plaintiff will suffer unconscionable injury or defendant will be unjustly enriched if the oral contract is not enforced [citation]." (*Ruinello* v. *Murray*, 36 Cal.2d 687, 689 [227 P.2d 251].) ▮ Whether the elements of estoppel are present depends on the particular factual context. (*Jirschik* v. *Farmers & Merch. Nat. Bank*, 107 Cal.App.2d 405, 406 [237 P.2d 49].)

Plaintiffs contend, however, that they have alleged sufficient facts to obviate the bar of the statute. This contention is without substance. The allegations of the complaint disclose that in reliance on the alleged oral contract, plaintiffs performed miscellaneous services, some purely impersonal and others of an intimate and confidential nature, requiring a degree of self-discommoding in order to accommodate themselves to the specialized needs of the decedents. Ordinarily, in order to prevent unjust enrichment, the law provides a remedy wherein the reasonable value of such personal services may be recovered in an action against the estate of the deceased promisor based upon the theory of *quantum meruit*. (*Long* v. *Rumsey*, 12 Cal.2d 334 [84 P.2d 146]; *Leoni* v. *Delany*, 83 Cal.App.2d 303 [188 P.2d 765, 189 P.2d 517].) ▮ However, the mere rendition of personal services is not sufficient to relieve a contract from the operation of the statute in an action for quasi-specific performance unless they are of "such peculiar, extraordinary, or exceptional character that it is impossible to estimate their value by any pecuniary standard or to adequately compensate for them in money [citations]." (*Fowler* v. *Hansen*, 48 Cal.App.2d 518, 522 [120 P.2d 161].) An examination of the allegations previously set out clearly manifests that the services performed

are not of such unique or extraordinary character as would make them noncompensable in money; nor have plaintiffs subjected themselves to such a detrimental change of position as would work an unconscionable hardship to leave them to their legal remedy of *quantum meruit.* (*Chahon* v. *Schneider,* 117 Cal.App.2d 334 [256 P.2d 54]; *Jirschik* v. *Farmers & Merch. Nat. Bank, supra; Murdock* v. *Swanson,* 85 Cal.App.2d 380 [193 P.2d 81].)

In the Chahon case, the plaintiff took one Berge into her own home, and in reliance on an oral promise to leave his estate to her, provided extensive nursing care, did all of his washing, ironing, mending, sewing and other household tasks; cooked special food for him; gave him back massages and helped him to walk while he was convalescing; did all his personal errands outside the house and took him on weekend trips. When plaintiff's husband died, plaintiff desired to sell her home, give up her job and enjoy a more complete social life than was possible while caring for Berge. Thereupon Berge induced her not to sell the house, but to continue her care of him, by reaffirming his oral promise to will her his estate. She acceded, and cared for him until his death, though his demands increased, though he attempted to dominate her business and social activities and discouraged her friends from calling at the house. Throughout this time Berge paid her $40 monthly, and at his death left her only $1,000 by will instead of the promised estate. Plaintiff brought an action for quasi-specific performance. Judgment for defendant on sustaining a demurrer to the complaint was affirmed, and petition for a hearing was denied by the Supreme Court.

In the Jirschik case, plaintiff, 70 years of age, rendered housekeeping and nursing services to a person who promised to will her $15,000. She alleged she could have gotten work at a higher rate of pay which would have carried social security benefits, but was induced by the oral promise to stay on and work continuously, foregoing vacations and days off. A demurrer to a complaint seeking specific enforcement of the promise was sustained and affirmed on appeal, and a petition for a hearing denied by the Supreme Court.

In the Murdock case, plaintiff brought an "Action to Impress a Trust, Specific Performance, and on a Claim" based on an oral contract to make a will in consideration of care for the decedent, the rendition of personal services, the furnishing of goods, assistance in caring for property and

care for decedent in plaintiff's home if necessary. In addition to enumerating the various personal services and goods provided, plaintiff alleged it became necessary to spend so much time with decedent that she found it impossible to continue to operate her own beauty shop, which she was obliged to sell at great loss with respect to good will and future profit. Plaintiff also alleged that her performance of the agreement entailed the neglect of many of her marital, social and household duties and caused her to remain away from home and her husband for many hours at a time. In affirming a judgment of dismissal after demurrers were sustained, the court stated (p. 384): "It is well settled that equity will not intervene in such cases involving payment for personal services since the remedy at law is adequate. [Citation.]" The court further observed: "No such change of position here appears as to make it impossible for plaintiff to obtain compensation for anything she did other than through equitable relief . . ." (P. 385.) A petition for a hearing was denied by the Supreme Court.

We believe the cases last cited, in which the complaints alleged elements of stronger appeal to a court of equity than appear in the complaint now before us, are here controlling. There was here no uprooting from an established home, no transplantation in a new area, no abandonment of one's own business, no sacrifice of better opportunities, no taking of decedent into plaintiffs' own home; in short, a showing far less persuasive than in other cases where the relief sought was denied. Plaintiffs' generalized assertion that they changed their own mode of life and denied themselves outside pleasures does not sustain their cause of action in the light of the prevailing authorities. In *Tompkins* v. *Hoge,* 114 Cal.App.2d 257 [250 P.2d 174], an action for declaratory relief, plaintiff gave up her position in New York as a schoolteacher at a salary of $2,500 per year and the right to retire at a pension of $50 per month upon reaching the age of 70, in reliance on defendant's promise to devise all her property to plaintiff if the latter would come to defendant's home to care for her and her husband for the remainder of their lives. In discussing this aspect of the case in support of its position that equity denies relief when the services are compensable in *quantum meruit,* the court stated: "The detriment suffered by plaintiff in resigning her position, with respect both to loss of salary and pension rights, would have been proper

elements of damage in an action to recover for the value of plaintiff's services. The fact that plaintiff gave up association with friends and relatives in New York was comparable to the neglect of marital, social and household duties and absence from her home and husband, alleged by the plaintiff in the Murdock case. There was no finding that by reason of the facts found plaintiff suffered detriment in coming into the home of defendant that could not be compensated for in money. We think such a finding would have had no basis in the evidence. Anyone who goes into the home of another, there to reside permanently, gives up associations and ways of life for others that may turn out to be less desirable. Inability to be restored to the former status is not a good ground for equitable relief unless to deny it would operate as a fraud upon the party seeking relief. This is not such a case and was not considered by the trial court to be one. Such detriment as plaintiff suffered was compensable in damages and her claim therefor was one to be prosecuted at law and not in equity [citation].'' (*Tompkins* v. *Hoge,* *supra,* pp. 265-266.) A petition for a hearing by the Supreme Court was denied.

We have examined the cases to which plaintiffs have directed our attention. All of them differ so essentially on their facts from the present case as to be of no assistance. Some of them involve situations in which the plaintiff deeded over real property or surrendered valuable rights in real property in reliance on decedent's oral agreement to make a particular will; in others, the plaintiff gave up his own home and completely disrupted his own life to enter the decedent's home in a status analogous to that of a foster child. Other cases such as *Walker* v. *Calloway,* 99 Cal.App.2d 675 [222 P.2d 455]; *Fowler* v. *Hansen,* 48 Cal.App.2d 518 [120 P.2d 161], and *Notten* v. *Mensing,* 3 Cal.2d 469 [45 P.2d 198], are carefully distinguished in *Chahon* v. *Schneider,* 117. Cal. App.2d 334, 344 [256 P.2d 54], in which there appears a comprehensive examination of the authorities. It would be the work of supererogation to reiterate the pertinent discussion in which the court, in holding the oral contract unenforceable because of the adequacy of the legal remedy and the absence of unconscionable injury, followed the principles set forth in *Ruinello* v. *Murray,* 36 Cal.2d 687 [227 P.2d 251]; *Morrison* v. *Land,* 169 Cal. 580 [147 P. 259]; *Zellner* v. *Wassman,* 184 Cal. 80 [193 P. 84]; *Tompkins* v. *Hoge, supra;* *Jirschik* v. *Farmers & Merch. Nat. Bank, supra; Murdock* v.

*Swanson, supra,* and *De Mattos* v. *McGovern,* 25 Cal.App.2d 429 [77 P.2d 522]. We may adopt the following language from the Chahon case, which applies with equal force to the instant matter: ''It does not appear to us that plaintiff made such a change of position or that the services she rendered were so peculiar that she could not be compensated in terms of money. Recognition of the invalidity of the contract and consequent denial of enforcement of its provisions, would neither unconscionably injure the plaintiff nor unjustly enrich the decedent, his estate, or his legatee, were plaintiff to pursue her legal remedy of recovering from the estate the reasonable value of her services . . . [p. 339].''

As has been observed, plaintiffs might have pursued their legal remedy based on the theory of *quantum meruit,* provided they had first filed a claim against the estate of the deceased promisor. The complaint in the instant case, having failed to allege that plaintiffs presented a claim for the value of their services against the deceased, is also insufficient to state a cause of action for *quantum meruit.* (*Chahon* v. *Schneider, supra,* p. 346; *Morrison* v. *Land, supra,* p. 585; *De Mattos* v. *McGovern, supra,* p. 433.)

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.