[Civ. No. 23498.   Second Dist., Div. Two.   June 4, 1959.]

PEARL JEANNETTE PARKER, Appellant, v. LAW-
RENCE T. SOLOMON et al., as Executors, etc., Re-
spondents.

James Neville for Appellant.

Belcher, Henzie & Fargo, Willis & MacCracken, Frank B. Belcher and Leo J. Biegenzahn for Respondents.

HERNDON, J.—Plaintiff appeals from a judgment which followed an order sustaining a general demurrer to her fourth amended complaint without leave to amend. By said complaint plaintiff sought quasi-specific performance of an alleged oral agreement by the terms of which her father promised to transfer to her one-half of his estate, either during his lifetime or at his death. The father died testate on June 9, 1956, leaving an estate alleged to be of the value of $1,500,000. His will recites that he had no children but it contains a specific bequest in favor of plaintiff in the amount of $1,000. The coexecutors of decedent's will are the named defendants. Plaintiff alleges that her creditor's claim, a copy of which is incorporated into the complaint, was presented and rejected, and that the action is brought to establish the claim pursuant to the provisions of Probate Code, section 714.

The essential allegations of the fourth amended complaint, which the trial court found vulnerable to the test of the

general demurrer, are as follows: that plaintiff is the legitimate daughter of decedent and one Clara Purvin, and was born in New Orleans on October 23, 1915; that decedent deserted plaintiff and her mother at Waco, Texas, some three years after plaintiff's birth, and from that time until 1940 neither plaintiff nor her mother was able to locate the decedent; that during this period prior to 1940 she received no funds or support from her father, was forced to leave school at the age of 14 in order to support and maintain herself and to help care for her mother, and that she suffers from a congenital venereal disease communicated to plaintiff's mother by decedent, and, as a result, suffered blindness and other physical impairments.

The complaint further alleges that in 1940 plaintiff finally located and communicated with decedent, who then resided in California, and from that date until his death plaintiff corresponded with him and saw and spoke to him in New York City on many occasions; that about 1944, in New York City, plaintiff informed decedent that she wanted to move to Los Angeles and at the same time she demanded that decedent compensate her for his neglect and his failure to support her as a child; that decedent then told plaintiff that he did not want her to move to Los Angeles as it would embarrass him in his social and business activities.

The oral agreement made upon this occasion is alleged in the following terms:

"That at said time and place decedent further orally promised and agreed that, while he was not able to provide for plaintiff at said time, if plaintiff would refrain from pressing her said claims and would not move to Los Angeles, decedent would provide for plaintiff and transfer assets to plaintiff from decedent's estate in an amount commensurate with plaintiff's rights as an only living child. That at said time and place plaintiff was informed and believed and said decedent led plaintiff to believe and told plaintiff that plaintiff's rights as an only living child would entitle plaintiff to one-half of decedent's said property and estate. That at said time decedent was a man of considerable wealth and prominence in and about the community of Southern California. Decedent further orally promised and agreed that he would so provide and transfer said amounts either during decedent's lifetime or at decedent's death, but that in any event plaintiff should not be concerned or worried about her acquisition of said rights and property.

"That in consideration of and in reliance upon the promises of said decedent as aforesaid, plaintiff promised and agreed to refrain from assertion of her claims against decedent by reason of his desertion and non-support and to remain out of her father's life and that in accordance with plaintiff's promise, and in reliance upon decedent's said promise and agreement, plaintiff did refrain from assertion of her said claims and rights and did remain out of her father's life; that plaintiff continued to receive letters from him and to visit and communicate with him at his request in and about New York City. That upon such occasions said decedent frequently repeated his promises that he would take care of plaintiff if she would not disclose her relationship to him and remain away from his home and business in Los Angeles or further press him to perform his agreements to make up for her poverty stricken youth and physical condition."

The second cause of action is in *quantum meruit* for services allegedly rendered decedent. It simply alleges "[t]hat plaintiff performed work, labor and services for the decedent during his lifetime, all at the special instance and request of said decedent. That the reasonable value of the said services is Seven Hundred Fifty Thousand Dollars ($750,000.00) no part of which has been paid, although payment has been duly demanded."

The body of the creditor's claim filed in decedent's estate and incorporated into the amended complaint reads as follows:

"$750 000  Decedent's breach of contract to bequeath claimant that share of his estate to which a daughter and only child is entitled under California law when her father dies intestate.

"$750 000  Consideration provided to decedent by claimant pursuant to agreement to bequeath her that share of his estate to which a daughter and only child is entitled under California law when her father dies intestate (alternative).

The amounts stated herein are subject to amendment when the amount of decedent's estate is known."

By their demurrer defendants invoked, as against the first alleged cause of action, that clause of the statute of frauds which declares invalid "[a]n agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to

make any provision for any person by will'' unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or his agent. (Civ. Code, § 1624, subd. 6, and Code Civ. Proc., § 1973, subd. 6.)

Plaintiff's basic contention on this appeal is that the agreement which she has pleaded is not within the inhibition of the statute of frauds because the alleged promise of decedent is in the alternative, *i.e.*, he promised to transfer the property to plaintiff either during his lifetime or at his death.

█ We conclude that the trial court was entirely correct in holding the pleaded agreement to be within the provisions of subdivision 6 of the statute of frauds. In *Hagan* v. *McNary*, 170 Cal. 141, 143 [148 P. 937, L.R.A. 1915E 562], the plaintiff alleged that the decedent Kupper promised to pay plaintiff the sum of $7,000 if she would furnish him with a permanent home during the term of his natural life, and that in reliance upon this promise plaintiff furnished Kupper such a home to the time of his death. When Kupper's administrator rejected her creditor's claim, plaintiff commenced her action to establish it. The trial court rendered judgment against plaintiff, holding that the agreement was within the above quoted provision of the statute of frauds. In affirming the judgment, the Supreme Court commented that plaintiff's promise (to perform certain acts for the lifetime of the decedent) ''. . . could not be completed so long as breath remained in his [decedent's] body. The *plaintiff's* part of the agreement became completely executed upon his death *and not until then.*'' (Emphasis added.)

In *Smith* v. *Bliss*, 44 Cal.App.2d 171 [112 P.2d 30], plaintiff sought to recover from a decedent's estate upon an oral contract for personal services allegedly rendered to the decedent. Plaintiff alleged, among other things, that Mrs. Coffin, the decedent, promised to compensate for plaintiff's valuable services by creating joint bank accounts or by making provision for plaintiff in her will, and that the amount which plaintiff would thus receive would be equal to gifts which Mrs. Coffin would make in like manner to one Irene Martin. The trial court sustained without leave to amend a demurrer to plaintiff's complaint. In affirming the ensuing judgment, the appellate court held that the alleged oral agreement was invalid under the statute of frauds, declaring at page 175: ''The foregoing is clearly an attempt to plead a contract of employment. By its express terms the contract was to continue from the date it was made in 1932 down to the date

of the death of Mrs. Coffin. The amount of the compensation depended on the amount of the accounts in favor of Irene Martin. Until the date of Mrs. Coffin's death that amount could not be known. Hence the amount to be put in a joint bank account in favor of the plaintiff, or the amount to insert in a will, could not be known. Obviously said contract could not be performed during the lifetime of the promisor (Mrs. Coffin). It was therefore clearly within the statute of frauds. (Code Civ. Proc., § 1973, subd. 6; *Hagan* v. *McNary,* 170 Cal. 141 [148 P. 937, L.R.A. 1915E 652].)''

Likewise in the case at bar it is clear that the agreement pleaded could not have been fully performed on *plaintiff's* part prior to her father's death, since her promise was to refrain from asserting any claim against him ''and to remain out of his life.'' And it is equally clear that the amount which plaintiff claims under the agreement (one-half the value of his estate) could not be ascertained until after his death.

*Roy* v. *Salisbury,* 21 Cal.2d 176 [130 P.2d 706], is the only decision cited by plaintiff in support of her contention that the instant agreement is not within the statute. The cited case is distinguishable. In that case the decedent had purchased a dog from plaintiff, a kennel owner, and thereafter the parties had orally agreed that if the buyer was unable to care for the dog, or should die, the plaintiff would board the dog at an agreed monthly figure. In affirming a judgment for plaintiff on the contract, the Supreme Court held the oral agreement without the terms of the statute because it was possible that the agreement would be fully performed during the lifetime of decedent. If decedent had become ill and was therefore unable to care for the dog, the plaintiff might commence performance of his part of the agreement. Then, if the dog were to die before its master, plaintiff's obligations under the contract would be completed and the owner would be obliged to pay the balance of the boarding fee. Thus the oral agreement was not merely a provision for the care of the dog after the death of the owner, but could be fully performed by both parties during the decedent's lifetime. It is clear that the agreement pleaded in the case at bar could not be fully performed on plaintiff's part prior to her father's death, since her promise was to refrain from asserting any claim against him ''and to remain out of his life.''

Plaintiff has not cited such cases as *Monarco* v. *Lo Greco,* 35 Cal.2d 621 [220 P.2d 737], and her briefs contain no argument

that she has stated sufficient facts to invoke the doctrine of estoppel or to entitle her to quasi-specific performance of an oral agreement within the statute of frauds. That the amended complaint does not state facts sufficient to invoke these equitable doctrines is made clear by reference to *Smith* v. *Smith*, 126 Cal.App.2d 194 [272 P.2d 118] ; *Cahon* v. *Schneider*, 117 Cal. App.2d 334 [256 P.2d 54] ; *Palmer* v. *Phillips*, 123 Cal.App.2d 291 [266 P.2d 850] ; *Bonnear* v. *Bank of America*, 84 Cal.App. 2d 107 [190 P.2d 307] ; and see *Ruinello* v. *Murray*, 36 Cal.2d 687 [227 P.2d 251].

As stated in *Monarco* v. *Lo Greco, supra,* 35 Cal.2d 621, 623-624 : ''The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract [citations], or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute. [Citations.] In many cases both elements are present. Thus not only may one party have so seriously changed his position in reliance upon, or in performance of, the contract that he would suffer an unconscionable injury if it were not enforced, but the other may have reaped the benefits of the contract so that he would be unjustly enriched if he could escape its obligations.''

However, as stated in *Smith* v. *Smith, supra,* 126 Cal. App.2d 194, 197 : ''To enforce an oral contract to bequeath or devise property in equity by quasi-specific performance, it must be shown that the contract is definite and certain, the consideration adequate . . . that the character of the services is such that a money payment would not furnish adequate compensation to the plaintiff, that there is such a change in the plaintiff's condition and relations in reliance on the contract that a refusal to complete the contract would be a fraud upon him. . . .''

An examination of the amended complaint in the light of the applicable decisions discloses that plaintiff has failed to allege either ''an unconscionable injury'' or ''unjust enrichment'' which would result from denying enforcement of the alleged oral contract. (*Cf. Monarco* v. *Lo Greco, supra,* 35 Cal.2d 621, 623.) The complaint fails to allege a repre-

sentation by decedent that a writing was not necessary or would be executed or that the statute would not be relied upon as a defense. (*Cf. Seymour* v. *Oelrichs*, 156 Cal. 782, 794-795 [108 P. 88, 134 Am.St.Rep. 154] ; *Standing* v. *Morosco*, 43 Cal. App. 244, 246 [184 P. 954].) ▮ An allegation of misrepresentations going to the requirements of the statute of frauds is not a prerequisite to a finding of an estoppel to assert the statute (*Monarco* v. *Lo Greco, supra*, 35 Cal.2d 621, 625.) Nevertheless there must be an allegation of conduct by the party against whom the estoppel is asserted which would make it inequitable for him to rely on the statute as a defense. (*Cf. Notten* v. *Mensing*, 3 Cal.2d 469, 474 [45 P.2d 198] ; *Seymour* v. *Oelrichs, supra*, 156 Cal. 782, 794; *Anderson* v. *Stansbury*, 38 Cal.2d 707, 715 [242 P.2d 305] ; see 23 Cal.Jur.2d 420, § 140.) ▮ It is obvious that the mere making of an oral agreement which is within the statute is not *in and of itself* sufficient to estop the promisor from raising the statute as a defense. There must be additional extraordinary conduct or circumstances to justify a refusal to apply the statute. ▮ In the instant case the plaintiff has simply alleged the making of the oral promise. She has failed to allege sufficient facts to show that it would be ''unconscionable'' to invoke the applicable statute. As stated in *Zellner* v. *Wassman*, 184 Cal. 80, 87 [193 P. 84] : ''. . . neither the mere omission to put a contract in writing nor such omission coupled with performance is alone sufficient to create an estoppel. . . . The words and conduct on the part of decedent in making the oral promise and accepting plaintiff's performance did not amount to an inducement to plaintiff to, in effect, waive a written instrument in reliance upon a representation that decedent would stand by his agreement and not avail himself of the statute of frauds. *There is, therefore, an absence of the element of fraud which is requisite to an estoppel. It is a case in which the consequences of the failure to comply with the statute must be borne by the party who seeks to enforce the agreement, and it follows that plaintiff has no cause of action upon the contract.''* (Emphasis added.)

Nor has plaintiff alleged facts establishing unjust enrichment, the second element from which an estoppel to assert the statute can be raised. (*Monarco* v. *Lo Greco, supra*, 35 Cal.2d 621, 623.) Decedent's estate would not be unjustly enriched if the oral contract on which plaintiff relies were not enforced. (*Cf. Ruinello* v. *Murray, supra*, 36 Cal.2d 687, 690.) Plaintiff

did not transfer property to decedent during his lifetime (*Stewart* v. *Smith*, 6 Cal.App. 152, 162 [91 P. 667] ; *cf. Bonnear* v. *Bank of America, supra*, 84 Cal.App.2d 107, 110 ; see *Palmer* v. *Phillips, supra*, 123 Cal.App.2d 291, 298) nor make improvements on property owned by decedent (see *Smith* v. *Smith, supra*, 126 Cal.App.2d 194, 198.)

When plaintiff first made contact with her father in 1940 she had attained the age of 25 years. Prior to that time, according to her allegations, she had been able ''to work in order to support and maintain herself and to help care for her mother.'' There is no allegation that plaintiff was destitute or unable to support herself during any period of time, either before or after 1940. It is difficult, therefore, to discern any tenable basis upon which plaintiff could then have predicated a legal claim against her father for past or prospective support. Her actions in ''remaining away from decedent's home and social and business life and not disclosing to decedent's friends and business associates in the Los Angeles community that she was decedent's daughter'' could hardly be regarded as equivalent to the rendition of services. Thus, it seems that there was nothing in the alleged ''consideration'' for the decedent's promise which legally could be considered to constitute unjust enrichment or to be sufficient to work an estoppel.

However, assuming *arguendo* that plaintiff has alleged the rendition of services or the furnishing of some consideration which could be evaluated in terms of money, then on that assumption her remedy, if any, would lie in *quantum meruit* and not in an action on the alleged oral contract. (*Zellner* v. *Wassman, supra*, 184 Cal. 80, 88 ; *Long* v. *Rumsey*, 12 Cal.2d 334, 341 [84 P.2d 146] ; *Leoni* v. *Delany*, 83 Cal.App.2d 303 [188 P.2d 765, 189 P.2d 517] ; *cf. Murdock* v. *Swanson*, 85 Cal. App.2d 380, 386 [193 P.2d 81] ; *Palmer* v. *Phillips, supra*, 123 Cal.App.2d 291, 299.) However, as we shall presently show, plaintiff has failed properly to invoke that remedy.

■ Plaintiff's second contention is that a general demurrer does not lie against a common count, and that she is entitled to recover the reasonable value of the *services* alleged in her second cause of action. She relies upon the rule enunciated in *Leoni* v. *Delany, supra*, 83 Cal.App.2d 303, that where *services* have been rendered under a contract which is unenforceable because within the purview of the statute of frauds an action generally will lie upon a common count. There are, of course, many other cases which recognize the

propriety of an action in *quantum meruit* for the value of services rendered in reliance upon a promise to compensate which is made unenforceable by the statute of frauds. ██ It is well settled, however, that the filing of a proper creditor's claim is an indispensable prerequisite to the maintenance of the action under such circumstances as are here presented. (*Smith* v. *Smith, supra,* 126 Cal.App.2d 194, 198; *Murdock* v. *Swanson, supra,* 85 Cal.App.2d 380, 385.)

██ The basic obstacle which confronts plaintiff in the case at bar is the inescapable fact that neither her creditor's claim nor her action is premised upon any right to recover the reasonable value of any *services* which would afford the basis for a recovery in *quantum meruit.* Although the creditor's claim (which makes no mention of services) is stated in alternative form, both statements are to the same effect, *i.e.,* that plaintiff claims $750,000, or one-half the value of the estate, pursuant to decedent's agreement ''to bequeath claimant that share of his estate to which a daughter and only child is entitled under California law when her father dies intestate.'' The essential nature of the claim is definitely established by the following allegations of paragraph II of the common count contained in plaintiff's original complaint: ''That between December 9, 1918 and June 9, 1956, the date of said decedent's death, plaintiff performed work, labor and services for the decedent, consisting of supporting, educating and maintaining herself and her mother without the aid of decedent, remaining away from decedent's home and social and business life and not disclosing to decedent's friends and business associates in the Los Angeles community that she was decedent's daughter; all at the special instance and request of the said decedent. . . . That the reasonable value of the said services is Seven Hundred Fifty Thousand Dollars ($750,000), no part of which has been paid, although payment has been duly demanded.''

The omission of the foregoing quoted allegations in the fourth amended complaint did not withdraw them from the court's consideration in ruling on the demurrer. ██ Facts once alleged in a verified pleading and rendering it vulnerable to demurrer cannot be withdrawn from consideration by the court merely by omitting them from an amended pleading without explanation. (*Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358]; *Neal* v. *Bank of America,* 93 Cal.App.2d 678,

682 [209 P.2d 825] ; *Pike* v. *Archibald*, 118 Cal.App.2d 114, 118 [257 P.2d 480].) ■■ It thus appears that the only consideration for decedent's alleged promise consisted, not of services rendered, but rather of plaintiff's forbearing to assert a claim against decedent for support and of her refraining from intruding herself into his life.

Moreover, the identity of the amounts claimed in the alternative statements of the creditor's claim and the two counts of the complaint, together with the obvious fact that the amount so claimed bears no relationship to the reasonable value of any alleged services, conclusively establishes the basis of the second count.

■■ A general demurrer may be interposed when the complaint shows on its face that the agreement sued on is within the statute of frauds and does not comply with its requirements. (*Maynes* v. *Angeles Mesa Land Co.*, 10 Cal.2d 587, 590 [76 P.2d 109] ; *Harper* v. *Goldschmidt*, 156 Cal. 245, 252-253 [104 P. 451, 134 Am.St.Rep. 124, 28 L.R.A. N.S. 689].) Plaintiff has attempted to avoid this familiar rule of pleading (see 23 Cal.Jur.2d 440, § 150 ; 39 Cal.Jur.2d 196, § 134) by alleging a second cause of action on the contract in the guise of a common count which ordinarily is not subject to general demurrer. (*Weitzenkorn* v. *Lesser*, 40 Cal.2d 778, 792-793 [256 P.2d 947] ; see generally 2 Witkin, California Procedure, 1239, § 263.) ■■ However, it is proper to sustain a general demurrer to a common count separately pleaded in a complaint where the recovery sought on the common count is obviously based on the same set of facts specifically pleaded in the count which fails to state a cause of action. (*Owens* v. *Traverso*, 125 Cal.App.2d 803, 809 [271 P.2d 164] ; *Hays* v. *Temple*, 23 Cal.App.2d 690, 695 [73 P.2d 1248] ; see 39 Cal.Jur.2d 133, § 89.) ■■ But if the deficiency of the first count is that it pleads a contract which is unenforceable because it is not in writing, a general demurrer will not lie to a common count in which plaintiff seeks recovery of the reasonable value of the services rendered under the otherwise valid contract. (*Leoni* v. *Delany, supra,* 83 Cal.App.2d 303, 306-307.)

■■ As we have observed, plaintiff has made no effort to present a claim for the reasonable value of services rendered decedent. And plaintiff has manifestly failed to bring herself within the rule of *Leoni* v. *Delany, supra,* by pleading a second cause of action in which she seeks the reasonable value of services rendered decedent as a possible alternative to recovery

of the larger sum claimed under an oral contract falling within the inhibition of the statute. (*Leoni* v. *Delany, supra,* 83 Cal.App.2d 303, 307.) To hold that this common count is not subject to general demurrer would be to nullify the statute (Civ. Code, § 1624, subd. 6; Code Civ. Proc., § 1973, subd. 6) which declares unenforceable the oral contract on which the purported common count obviously rests. (See Rest., Restitution, 243, § 62, comment *b.*)

Since the creditor's claim which plaintiff seeks to establish by this action is not one for the reasonable value of services, the instant case is governed by the holding in *Murdock* v. *Swanson,* 85 Cal.App.2d 380 [193 P.2d 81]. In that case, as here, the complaint was in two counts. The first count specifically alleged an oral agreement in which the decedent promised to leave his estate to plaintiff in return for goods and services to be rendered by plaintiff during the remainder of decedent's lifetime. The second count was in *quantum meruit* for the reasonable value of such goods and services thus rendered by plaintiff. Plaintiff sought recovery of the identical amount in each cause of action. A general demurrer was sustained as to both counts. In affirming the ensuing judgment, the appellate court states at page 387: "The amended claim thus attached, and made the basis of the second cause of action, contains no reference to the reasonable value of the services and goods furnished to the decedent. It consists of a general statement of services and goods furnished to the decedent with a statement that all thereof was rendered and furnished at the request of the decedent for her use and benefit, and upon her promise to pay the claimant by making a will leaving all of her real and personal property to the claimant; . . ." (And at p. 388): "It appears that the second cause of action, like the first, was in fact based upon the agreement and upon a claim filed demanding the entire estate because of that agreement, and no real attempt was made to allege a cause of action based upon *quantum meruit.*"

Our disposition of the determinative issues of law above discussed renders it unnecessary for us to discuss or decide respondent's further contention that any possible cause of action on the theory of *quantum meruit* is barred by the statute of limitations. (See *Long* v. *Rumsey,* 12 Cal.2d 334, 341-342 [84 P.2d 146] and *Beard* v. *Melvin,* 60 Cal.App.2d 421, 428-429 [14 P.2d 720].)

The trial court did not abuse its discretion in sustaining the demurrer to the fourth amended complaint with-

out leave to amend. In *Ruinello* v. *Murray, supra,* 36 Cal.2d 687, it was held that there was no abuse of discretion in so sustaining a demurrer to a third amended complaint. At page 690 the Supreme Court stated: ''Although the deficiencies in plaintiff's complaints were raised in defendant's demurrers, after three attempts he has not overcome them. The trial court could reasonably conclude that he was unable to do so, and accordingly, it did not abuse its discretion in sustaining the demurrer to the third amended complaint without leave to amend.''

Since plaintiff here, after five attempts, has failed to state a cause of action, it seems fair to assume that none can be stated.

The judgment is affirmed and the purported appeal from the order sustaining the demurrer is dismissed.

Fox, P. J., and Ashburn, J., concurred.