[Civ. No. 19852. First Dist., Div. One. Oct. 11, 1962.]

FRANK E. LUNDQUIST, Plaintiff and Appellant, v. MA-
RINE ENGINEERS BENEFICIAL ASSOCIATION
NO. 97, INC., et al., Defendants and Respondents.

Marshall W. Krause for Plaintiff and Appellant.

Roos, Jennings, Haid & Gartland, Eugene L. Gartland and John Victor Tilly for Defendants and Respondents.

BRAY, P. J.—Petitioner appeals from that portion of the judgment ordering "that petitioner recover no damages from respondents."

### QUESTION PRESENTED

Was there substantial evidence that petitioner suffered no damage from his wrongful exclusion from respondent, a trade union?

### RECORD

Petitioner filed a petition for writ of mandate in the San Francisco Superior Court praying that he be restored to the rights and privileges of membership in respondent union, and for damages and costs of suit. After a trial, judgment was entered ordering petitioner reinstated as a member, but denying him damages. His appeal is only as to the denial of damages.

Petitioner has been a marine engineer since August 1920, when he received his license and his membership in the union. The union, its president and its business manager refused to reinstate petitioner to membership from November 1956, to July 1960. Under the particular conditions prevailing in the employment of marine engineers this refusal practically deprived petitioner of his right to earn a living from his profession of marine engineer.

Sometime in 1951 petitioner was "screened" by the United States Coast Guard under the authority of the Magnuson Act. (50 U.S.C.A. §§ 191, 192, 194.) This meant that petitioner could not sail under his license. Because he could not sail, and because union dues would be a drain on his finances, petitioner received a "withdrawal card" from the union. Under the constitution and bylaws of the association of which

the union is a subordinate, petitioner was entitled to reinstatement on the payment of certain fees, provided that he had not sailed as a marine engineer during the time of his withdrawal. In 1955 *Parker* v. *Lester* (9 Cir.) 227 F.2d 708, was decided, declaring the entire Coast Guard screening program unconstitutional. Thereupon, petitioner applied for and received his validated Coast Guard license to sail as a marine engineer.

On November 27, 1956, petitioner applied to respondent union for reinstatement. He was neither granted nor denied reinstatement until on July 1, 1960, the trial court in this proceeding ordered him reinstated. The court found that petitioner had been wrongfully excluded from the rights and privileges of union membership from the time of his application for reinstatement in 1956, but found that he had suffered no monetary or financial damages because of said wrongful exclusion.

## DAMAGES

The burden of proving damages with reasonable certainty was on petitioner. (*Tremeroli* v. *Austin Trailer Equip. Co.* (1951) 102 Cal.App.2d 464, 480 [227 P.2d 923].) Our duty on this appeal is not to be concerned with the weight of evidence but with the determination of whether there is substantial evidence, including the reasonable inferences therefrom, to support the court's finding that petitioner suffered no pecuniary damage from his wrongful exclusion by the union. (*Overton* v. *Vita-Food Corp.* (1949) 94 Cal. App.2d 367, 370 [210 P.2d 757]; *Estate of Bristol* (1943) 23 Cal.2d 221, 223-224 [143 P.2d 689].) Apparently it was the trial court's determination that petitioner would not have gone to sea as a marine engineer in the period 1956 to time of trial even had he at the time of application been reinstated in the union. Supporting this determination is the evidence concerning petitioner's employment record. In the 13-year period from 1937 to 1950 he spent only 17 or 18 months at sea. In 1941 he withdrew from the union and took a shoreside job in 1942. From 1942 to 1947 he was employed by the War Shipping Board as a marine surveyor. From 1940 to 1950 his total time at sea amounted to only approximately 13 months. In 1951 his license was withdrawn by the Coast Guard. (The union had nothing to do with this matter.) The very day in November 1956 when his license

was restored he returned to his old position as a marine surveyor with the federal government. His position as marine surveyor terminated March 20, 1957. He was then within seven months of his 65th birthday. There was evidence that it was then the general practice of certain steamship companies to impose a 65-year age limit for employment on their ships, although the union in 1949 negotiated a hiring hall agreement with management whereby requests for employment were filled on a rotating basis without regard to age. From the time petitioner's position as marine surveyor terminated until the time of trial, petitioner was engaged in managing, repairing and maintaining rental units which belonged to him.

It was stipulated that marine engineer jobs were available at the time petitioner applied for reinstatement in the union. Petitioner testified that he had desired reinstatement as he thought that he would be able to get a permanent ''good job and recoup some of my earnings that I had lost during the ensuing years.'' However, in spite of this statement, a reasonable inference could be drawn (and was drawn by the court) that during the denial of his reinstatement in the union he did not intend to go out to sea, even for the six months' employment which would have qualified him for night relief work on vessels in port. When asked by the dispatcher of the union if he intended to come back into the union with the intent of creating dissension or of going to sea, petitioner answered that his reason for going back was none of the manager's business.

While the evidence would possibly have supported a finding that petitioner would have taken seagoing employment if his union status would have permitted it, there is substantial evidence that he would not have done so, and that therefore his nonreinstatement caused him no loss of wages.

This brings us to the question as to whether there was substantial evidence that he suffered no monetary damages for physical and mental pain, humiliation and degradation.[1]

Damages for shame and humiliation caused by wrongful suspension or expulsion from a union are recoverable. (*Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal.2d 134, 142 [231 P.2d 6, 21 A.L.R.2d 1387] ; *Taylor* v. *Marine Cooks & Stewards Assn.* (1953) 117 Cal.App.2d 556, 562-563 [256 P.2d 595].) The ''difficulties of assessing these damages with

---

[1]Petitioner conceded that he had suffered no physical disability.

anything like mathematical accuracy should not be allowed to defeat an award reasonably supported by the evidence." (*Taylor, supra,* and cases there cited, pp. 563-564.)

Petitioner testified that the union's action had been a terrific blow to his pride and that being denied the opportunity to follow his profession was "an affront."

■■ Although damages are recoverable there must be evidence from which the court may determine that the petitioner did suffer injury in these respects. Petitioner referred to the blow to his pride, and that the action of the union "is more of an affront, I would say, besides the economic question that figures in." Having in mind that the court felt from petitioner's testimony that even if reinstated petitioner would not have taken seagoing employment, there is no indication that petitioner would have participated in the union activities or association with its members. Just how the court could have measured damages upon the meagre testimony concerning humiliation does not appear. At no time did petitioner testify that the situation worried him. A reading of the transcript of testimony indicates that it was probably petitioner's theory that the wrongful act of the union alone was sufficient proof of damages in all the categories charged. This was not a sufficient showing upon which the court could award damages.

■ Prosser in *Insult and Outrage* (1956) 44 California Law Review, pages 40, 43, points out that generally for a recovery for emotional distress, there should be some showing of either "physical consequences which can be attested objectively" or of "defendant's conduct and the circumstances of the case." The showing made in the trial court was not sufficient to meet this test.

■ Petitioner urges that the findings are inconsistent because the court found that he had wrongfully been denied reinstatement in the union and yet the court refused to find that petitioner had thereby been monetarily damaged. These are two separate elements, the burden of proof of each being on the petitioner. ■ As pointed out, the mere fact of wrongful denial of membership does not in itself prove monetary damage.

Petitioner contends that he was deprived of the right to the status of membership, entitling him "to participate in union activities by voting, running for office, associating with his fellows" and otherwise participating in the rights of a member in good standing.

However, this contention was not an issue in the trial court. In his petition, he stated that he had been "deprived of his rights as a member of said respondent trade union. . . ." He then alleges inability to secure employment, and loss of earnings in the sum of $10,500, and then states that at the trial he will ask to insert such "additional damages as may be suffered by your petitioner from the date hereof to the date of trial." The petition then alleges damages for pain and suffering and humiliation, and asks for exemplary damages. Petitioner did not seek to amend the complaint to seek damages for loss of association. Unless a theory of damages is presented to the trial court it may not be considered on appeal. (*Kantlehner* v. *Bisceglia* (1951) 102 Cal.App.2d 1, 6 [226 P.2d 636].) Moreover, no evidence was offered upon which the trial court could place a valuation on petitioner's being deprived of these rights.

 So far as exemplary damages are concerned, petitioner concedes that section 3294, Civil Code (providing for exemplary damages) is preconditioned on the recovery of actual damages. (*Sasser* v. *Miles & Sons Trucking Service* (1953) 119 Cal.App.2d 239, 243-244 [259 P.2d 488].)

 Petitioner complains of the sustaining of objections to certain questions asked his expert, Howard A. Thor. The questions related to showing that employment as a marine engineer would have been available to petitioner had he had his membership restored when he applied therefor. Mr. Thor did testify at considerable length on the subject, discussing wages and the availability of employment, including that of night shore work provided petitioner spent six months at sea. In view of the fact that respondents stipulated that jobs would have been available, and that the court found that petitioner did not intend to go to sea, there could have been no prejudice to petitioner even if the court's rulings were erroneous.

Judgment affirmed.

Sullivan, J., and Molinari, J., concurred.

A petition for a rehearing was denied November 2, 1962, and appellant's petition for a hearing by the Supreme Court was denied December 5, 1962. White, J.,* participated therein.

---

*Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.