[Civ. No. 25526. Second Dist., Div. Two. Jan. 23, 1962.]

FRANCIS A. CAMPBELL, Plaintiff and Appellant, v. MARTIN H. WHITE et al., Defendants and Respondents.

Otis Babcock for Plaintiff and Appellant.

Ball, Hunt & Hart for Defendants and Respondents.

FOX, P. J.—This action was brought to recover damages for the alleged wrongful issuance and levy of two writs of attachment. Plaintiff has appealed from an adverse judgment.

Plaintiff is a young man whose name is Francis A. Campbell; his father's name is Francis E. Campbell. They both use the name Francis Campbell, omitting the middle initial. The young man lives at home with his father and mother (Violet Campbell). The family had an arrangement whereby the earnings of the son were turned over to the parents, and all bills were paid by them. Plaintiff was employed as a laminator by Zenith Plastic Company, hereinafter referred to as "Zenith."

On October 10, 1957, Francis Campbell (the father) purchased a mirror from the Peerless Home Supply, referred to hereinafter as "Peerless," on a conditional sales agreement which provided for a $7.00 down payment and the balance to be paid in weekly installments. The contract identified the purchaser as "Francis Campbell." At the time of the transaction, the father signed a credit application which represented that he was employed as a laminator by Zenith. However, he was unemployed at the time, and had not been employed by Zenith for some 12 years. The father also gave two credit references. One was a friend of both the father and son; the other was the person from whom the son was purchasing the home in which he and his parents resided. The next day Mr. Campbell told his son that he had purchased the mirror on credit and had signed a credit application stating that he (the father) was employed by Zenith. He told his son that there was some question about his credit, to which the son replied, ". . . we'll pay for it." After purchasing the mirror the father made only one or two payments.

When the payments due under the contract were not made, Peerless assigned it to Western Collection Bureau, hereinafter referred to as "Collection Bureau." Peerless instructed the Collection Bureau to attach if the claim was not paid. At the time of the assignment Peerless furnished the Collection Bureau with a credit application showing that the purchaser was employed by Zenith.

After the assignment, the Collection Bureau wrote to Francis Campbell at the address given on the credit application. The letter informed him of the assignment and demanded payment. Receiving no response to this letter, the Collection Bureau filed an action on the Peerless contract in the Los Angeles Municipal Court, secured a writ of attachment, and directed the marshal to attach the wages of Francis Campbell at Zenith. The levy was made on February 27, 1958.

At this point, in view of one of the questions that must be reviewed on this appeal, it is important to point out a conflict in the testimony of the plaintiff and the two individual defendants. Plaintiff testified that on the day following the levying of the attachment he drove into Los Angeles with his father; that his father remained in the car while he went to the office of the Collection Bureau; that he there met defendant White and informed him that he was "the wrong Francis Campbell"; that defendant White told him to see Mr. Hecht; that he saw Mr. Hecht, and told him that he worked at Zenith but

was the wrong Francis Campbell; he showed Hecht his driver's license and informed him that he would be discharged by Zenith if any more attachments were levied. He said that Hecht offered to release the attachment if he would sign a paper; that he refused to sign the paper and left. Both White and Hecht denied that plaintiff came to the Collection Bureau or that they discussed the case with him on the occasion in question. Hecht testified that plaintiff came into his office only once, on March 7, 1958, with his father. White, who is president of the Collection Bureau, testified that he never talked to the plaintiff or his father about the case or the attachment.

Plaintiff's testimony is in line with Hecht's testimony as to his having visited the Collection Bureau with his father on March 7th. Plaintiff claimed that he informed Hecht that the Peerless obligation was his father's. Plaintiff's father testified that he, the father, was willing to pay $10 on account and the balance in installments if his son's wages were released. He stated that Hecht accepted this offer, agreed to release the attachment, and called the marshal on the telephone to release it.

Hecht testified to a very different conversation and arrangement. He testified he knew nothing about the case until the parties came in on that date; that after plaintiff told him his name, and that his wages had been attached, he obtained the Collection Bureau records from the file. Plaintiff at first told him that it was his father's bill. After a general conversation about the matter, the father and son finally "both agreed to pay the account." Hecht believed that the plaintiff was liable on the Peerless account. As a result of this conference it was agreed that: "The attachment would be released, and they [the plaintiff and his father] would pay $10.00 down and $5.00 a week." He told them that they would have to sign a stipulation which would result in a default judgment if they failed to make the payments. Hecht gave his secretary the file and requested her to prepare the necessary stipulation for both of their signatures. Hecht understood that they would pay the $10 to her and that she would give them a release of the attachment. He had no further discussion with them. The stipulation relative to subsequent payments, however, was signed only by the father. Hecht was not present when it was signed. Plaintiff's wages were released in accordance with the arrangement made with Hecht. After the March 7th conversation neither the father nor the son made any payments

on the account. On March 25th the Collection Bureau mailed a notice to Francis Campbell, at the address given in the file, to make payments. No response was made to this demand. As a consequence, the Collection Bureau attached plaintiff's salary again on April 3, 1958. Plaintiff claims that the attachment was levied maliciously and without probable cause.

Defendant White is president of the Collection Bureau. According to his testimony he never had any conversation with the plaintiff or his father about the account, the suit or the attachment. He did, however, authorize the filing of a municipal court suit and the attachment, for he had been instructed to sue and attach if the account was not voluntarily paid. He further testified that he did not act maliciously or with any ill feeling toward the plaintiff; that he gave the aforesaid authorization with the sincere belief that the Francis Campbell whose wages were attached was the person indebted on the account. The employment manager of Zenith testified that it was his company's policy to discharge employees when three attachments were levied on their wages, unless one of them was the result of a mistake; that the first attachment was the one of February 27, 1958; that an attachment on an unrelated account was levied against Francis Campbell's wages on March 13th, and then the one of April 3d, following which plaintiff was discharged from his employment.

The court granted a nonsuit as to defendants Garber[1] and White. The court rendered judgment in favor of the Collection Bureau.

The court found, *inter alia*, that (1) the initial attachment was authorized by defendant White in reliance on the information supplied by Peerless; (2) plaintiff, on March 7, 1958, acknowledged the debt as his own and specifically promised to pay it; (3) he then made a $10 payment and his salary was released; (4) no weekly payments having been made, the Collection Bureau on March 25th mailed a notice to Francis Campbell demanding payment; (5) no response having been made to this letter, the Collection Bureau, on White's authorization, levied a second attachment on the wages of Francis Campbell at Zenith on April 3d; (6) Zenith, on April 4th, terminated plaintiff's employment pursuant to its policy of dismissing an employee receiving three wage attachments;[2]

---

[1] As to defendant Garber, the appeal was dismissed on motion.

[2] An intervening and unrelated attachment had been levied on plaintiff's wages on March 13th upon an obligation plaintiff admittedly owed.

(7) White acted solely as agent and officer of the Collection Bureau; (8) the defendants at all times had an honest and sincere belief that the levies of the writs of attachment were proper and that none of the defendants had any ill will or bad feeling against plaintiff; (9) the defendants had sufficient and probable cause for the issuance and levy of the writs of attachment on February 27 and April 3, 1958; and (10) in the issuance and levy of the attachments, there was no malice toward plaintiff on the part of any of the defendants.

In seeking a reversal plaintiff contends that (1) the evidence is insufficient to support the findings and judgment; (2) the evidence shows there was malice; and (3) the findings of fact and conclusions of law are fatally defective. None of these contentions are meritorious.

 In order to establish liability in a case of this character a plaintiff must allege and prove malice and want of probable cause on the part of the attacking party. (*Vesper* v. *Crane Co.*, 165 Cal. 36, 41 [130 P. 876, L.R.A. 1915A 941]; *Merron* v. *Title Guarantee & Trust Co.*, 45 Cal.App.2d 60, 63 [113 P.2d 481]; *Finn* v. *Witherbee*, 126 Cal.App.2d 45, 50 [271 P.2d 606].) The *Vesper* case, which is a leading authority in this field, says (p. 41): "When . . . the attachment defendant undertakes to proceed against the attachment plaintiff alone and independent of any right of action upon the bond, he must allege and show malice and want of probable cause on the part of the attachment plaintiff as required by the principles of the common law in actions for malicious prosecution. The averment of malice and want of probable cause go to the very gist of the action by the attachment defendant, and no recovery can be had unless these essential elements of liability are alleged and established by the evidence." In the *Finn* case, this court stated (p. 50): "It is only when the attachment is levied maliciously and without probable cause that the plaintiff [in the attachment suit] can be forced to pay for the detriment caused." It should be noted that the burden is on the plaintiff who sues for damages to establish both of these essential elements. (*Vesper* v. *Crane Co.*, *supra.*)

 Since want of probable cause and malice go to the very gist of this action we shall first examine the record to determine whether there is sufficient evidentiary support for the findings on these issues. As to the issuance and levy of the first writ (on February 27, 1958) it is clear that its issuance was based on the information furnished the Collection Bureau

by Peerless and that this information was, in turn, furnished by plaintiff's father. In the light of the identity of names (the middle initial not being used); the identity of the residence address; and the designation of the younger Campbell's place of employment as that of the place where the purchaser of the mirror worked, there can be no doubt that there was ample basis for directing levy of the initial writ on the plaintiff's wages at Zenith.

In passing on the propriety of the second levy, the conference between plaintiff and his father and Hecht of the Collection Bureau must be taken into account; and, in accordance with accepted principles of appellate review, the conflicts in the testimony as to what was said and done on that occasion, together with the reasonable inferences drawn therefrom, must be resolved in favor of the Collection Bureau. Thus we must accept the testimony of Hecht to the effect that plaintiff and his father agreed to pay the account; that they agreed to pay $10 down and $5.00 a week; that the attachment of February 27th would be released upon making the $10 payment; that this sum was then paid and the attachment released; and that he (Hecht) believed plaintiff was liable on the Peerless account. With plaintiff having in effect acknowledged the debt, and agreed to pay it, and having failed to make any of the agreed weekly payments, it would seem clear that the Collection Bureau was not without probable cause in levying the second attachment.

The court's finding that there was no actual malice is amply supported by the testimony of the representatives of the Collection Bureau that none of them had any ill will or bad feeling against the plaintiff and that each had an honest and sincere belief that the issuance and levy of the writs were proper.

Plaintiff's argument, in effect, that malice may be inferred where lack of probable cause is established is not here applicable because the court concluded upon substantial evidence that the "defendants had sufficient and probable cause for the issuance and levy of the writs of attachment."

To reach the conclusion for which plaintiff contends it would be necessary for this court to reevaluate the credibility of the witnesses, draw inferences contrary to those drawn by the trial court, and to reweigh the evidence. This, of course, a reviewing court has no authority to do.

Plaintiff's reliance on *Spellens* v. *Spellens,* 49 Cal.2d 210 [317 P.2d 613], and *Peterson* v. *Wilson,* 88 Cal.App.2d 617

[199 P.2d 757, 6 A.L.R.2d 258], is misplaced. These cases deal with a question substantially different from that here presented.

Plaintiff's contention that the findings and conclusions of law are fatally defective is based on the theory that the trial court failed to specifically pass upon a number of questions. But the court did find upon the issues of malice and lack of probable cause and found against plaintiff on both issues. Since these issues are the gist of his alleged cause of action (*Merron* v. *Title Guarantee & Trust Co., supra*) and are adequate to support the judgment, findings on other incidental matters become unnecessary.

There was no prejudicial error in granting defendant White's motion for nonsuit. As we have seen, the corporation was not guilty of either malice or want of probable cause in connection with the issuance and levy of either of the attachments. The asserted liability of the corporation was on the theory of *respondeat superior* for the acts of two of its agents— White and Hecht. Since the activities of both of these agents do not result in liability of the corporation it follows that the acts of one do not make him individually liable. This is simply the converse of the principle that where a judgment has been rendered in favor of an agent, and the only theory of liability against the principal is *respondeat superior*, a judgment in favor of the agent exonerates the principal. (See 2 Cal.Jur.2d, Agency, § 158.)

Affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied February 19, 1962, and appellant's petition for a hearing by the Supreme Court was denied March 21, 1962.