[Civ. No. 21569. First Dist., Div. One. July 2, 1964.]

JOE COY, Plaintiff and Appellant, v. ADVANCE AUTO-
MATIC SALES CO. et al., Defendants and Respondents.

314

Fred F. Cooper for Plaintiff and Appellant.

Marcel E. Cerf, Robinson & Leland and Herbert A. Leland for Defendants and Respondents.

BRAY, P. J.—Plaintiff appeals from order granting new trial after judgment on jury verdict in favor of plaintiff.[1]

[1]Such order is appealable. (Code Civ. Proc., § 963.)

## QUESTIONS PRESENTED.

A. Propriety of granting new trial to defendant Terry against whom judgment for punitive damages, but none for compensatory damages, was rendered.

B. Propriety of granting new trial as to the other defendants. Was a cause of action for abuse of process proved?

## RECORD.

Plaintiff Joe Coy brought this action for abuse of process against defendants Advance Automatic Sales Co., Lou Wolcher and Harrison Terry.[2] The jury rendered a verdict in favor of plaintiff and against defendant Terry in the sum of $1,000 "as and for punitive damages" (nothing for compensatory damages) and against the other defendants in the sum of $10,000 compensatory damages and $10,000 punitive damages. Judgment was entered thereon. Defendants moved for judgment notwithstanding the verdict.[3] Defendants' motion for new trial was granted on "the grounds of insufficiency of the evidence to sustain the verdict, and error in law, occuring at the trial. . . ."

## A. NEW TRIAL PROPERLY GRANTED DEFENDANT TERRY.

No judgment could have been entered on the award to plaintiff of punitive damages against defendant Terry without any award of compensatory damages. Therefore, the action of the trial court in granting defendant Terry a new trial was proper. In *Mother Cobb's Chicken Turnovers, Inc.* v. *Fox* (1937) 10 Cal.2d 203, 205 [73 P.2d 1185], the court set forth the reasoning with respect to a finding of punitive damages where there was no finding of actual damages. "This is an express finding that plaintiff has not suffered any actual damages. In view of this finding, the court was without right to award exemplary damages. The rule is stated in *Gilham* v. *Devereaux*, 67 Mont. 75 [214 P. 606, 33 A.L.R. 381], with annotation at page 384, as follows: 'The foundation for the recovery of punitive or exemplary damages rests upon the fact that substantial damages have been sustained by the plaintiff. Punitive damages are not given as a matter of right, nor can they be made the basis of recovery independent of a showing which would entitle the plaintiff to an award of actual damages. Actual damages must be found

---

[2] Two other defendants, Bebich and Kern, were granted nonsuits. This ruling is not involved in this appeal.

[3] The record fails to disclose the ruling, if any, on this motion.

as a predicate for exemplary damages. This is the rule announced in many authorities. . . .' '' (See also *Contractor's etc. Assn.* v. *California Comp. Ins. Co.* (1957) 48 Cal.2d 71, 77 [307 P.2d 626]; *Lundquist* v. *Marine Engineers Beneficial Assn.* (1962) 208 Cal.App.2d 390, 396 [25 Cal.Rptr. 250].) Plaintiff cites *Brokaw* v. *Black-Foxe Military Institute* (1951) 37 Cal.2d 274 [231 P.2d 816], for his contention that the failure to award compensatory damages against an employee does not avoid a verdict for punitive damages. The case does not so hold. The only question presented to the court was whether, in a personal injury action against a master and servant, the failure of the jury to return a verdict as to the servant while rendering one against the master based on *respondeat superior* relieved the master of liability. The court held that it did not.

B. New Trial Properly Granted The Other Defendants.

The complaint alleges that plaintiff for more than two years had operated an amusement machine business in Contra Costa County placing certain juke boxes, pool machines, bowling machines and other amusement machines in certain places in the county under exclusive contracts with the owners thereof. These contracts are valuable rights and essential to plaintiff's business which cannot be operated without them. Defendants Advance Automatic Sales Co., Inc., Lou Wolcher and Harrison Terry are competitors of plaintiff in the amusement machine business in the Bay Area.[4] On November 10, 1960, plaintiff was indebted to defendant under an account stated in the sum of $1,070.49, which was the only amount owed by plaintiff to defendant. On and prior to that day and again on November 15, 1960, defendant and defendant Terry conspired ''together in an effort and conspiracy to deprive plaintiff of nine of his exclusive locations for said amusement machines, in an effort to obtain said locations'' for defendant's business. In furtherance of the conspiracy defendant filed an action in Contra Costa County Superior Court for a total sum of $3,834.81 at a time when defendant knew that $1,070.49 was the only sum owed by plaintiff. Defendant obtained a writ of attachment in the sum

[4]It was stipulated at the trial that Advance Automatic Sales Co., Inc., and Lou Wolcher be deemed to be one and the same person and that Harrison Terry was employed by Lou Wolcher during the period described in the complaint. The word ''defendant'' used hereinafter will refer to both Advance Automatic Sales Co., Inc., and Lou Wolcher. Terry will be referred to as ''defendant Terry.''

of $3,834.81 and directed the Marshal of the Richmond Municipal Court to attach 18 of plaintiff's amusement machines in nine of said places in Contra Costa County. The attachment was levied by said marshal on November 15, 1960. Defendant arranged to accompany said marshal with his own machines "and attempted to and did arrange to place their own amusement machines in the place and stead of the machines of plaintiff," thereby taking said exclusive locations from plaintiff for the use and benefit of defendant. The 18 machines "picked up" by said marshal under said writ of attachment were of a value in excess of $10,000.

Plaintiff sought return of $2,764.32 excessive sum paid defendant, general and special damages in the sum of $22,400, and punitive damages of $15,000 from each defendant.

 Plaintiff's claimed abuse of process is based upon the allegations that with the motive of obtaining the locations of plaintiff's machines and substituting his own, defendant filed an action and obtained a writ of attachment for an excessive sum, had the marshal levy upon and remove plaintiff's machines valued far in excess of the amount due or even the amount for which the writ of attachment was issued.

 Without detailing the evidence, it may be said that there was evidence from which the jury could find that defendant desired to have plaintiff's machines attached and removed so that defendant could solicit plaintiff's business locations for his own machines. (Although defendant denied that this was the intention, the jury evidently so found.) As to the amount of the indebtedness due defendant from plaintiff the evidence shows at least that the correct amount was in dispute between the parties. Defendant's books showed the larger indebtedness. Plaintiff denied owing that amount although he was not clear as to exactly how much he did owe. Defendant told plaintiff, in effect, that the attachment would not be released unless plaintiff paid the amount claimed by defendant. The issue whether the amount claimed by the defendant was greater than the amount due and owing was taken from the jury by the court, it being of the opinion that the issue was relevant only in an action for malicious prosecution.

While the complaint alleged that the levy was on machines of values greatly in excess of the amount sued for, no evidence was introduced to support this allegation. Moreover, plaintiff is not now urging this contention. At oral argument counsel for plaintiff stated that he was basing his contention

that there was an abuse of process solely upon the fact that defendant's agent accompanied the marshal with the intent of soliciting the plaintiff's business locations as the machines were removed.

■■ The complaint did not state a cause of action for abuse of process nor did the evidence, viewing it most favorably towards plaintiff, prove such a cause of action. In *Kyne* v. *Eustice* (1963) 215 Cal.App.2d 627 [30 Cal.Rptr. 391], this court set forth the requisites of a cause of action for abuse of process. ■ There, we said: " 'One who uses legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby.' (3 Rest., Torts, § 682, p. 464; *Spellens* v. *Spellens,* 49 Cal.2d 210, 231 [317 P.2d 613]; *Tranchina* v. *Arcinas,* 78 Cal.App.2d 522, 525 [178 P.2d 65].) The gist of the tort is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish; and its essential elements are: (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceedings. (Prosser on Torts (2d ed.) § 100, p. 667; *Spellens* v. *Spellens, supra,* pp. 231-232.) Prosser describes the tort as follows: 'Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself, which constitutes the tort.' (P. 669; see *Spellens* v. *Spellens, supra; Tellefsen* v. *Key System Transit Lines,* 198 Cal.App.2d 611, 614-615 [17 Cal.Rptr. 919]; *Fairfield* v. *Hamilton,* 206 Cal.App.2d 594, 603 [24 Cal.Rptr. 73].) " (Pp. 631-632.)

■ It is well settled that an action for abuse of process does not lie for maliciously causing process to issue. (See 72 C.J.S. § 120, p. 1190.) Also see *Clark* v. *Nordholt* (1898) 121 Cal. 26, 28 [53 P. 400], holding that " 'If a person having a good cause of action against another willfully sues for a

much greater amount than is due and attach the property of the other, and put him to charges, he is liable' '' in an action for *malicious prosecution*. To the same effect is *Harris* v. *Harter* (1926) 79 Cal.App. 190, 195 [249 P. 39].

Therefore, the allegation that in the attachment action the amount sued for was greatly in excess of the amount due adds nothing to an attempt to set up a cause of action for abuse of process, and the court was justified in removing from consideration of the jury the determination of whether the amount sued for was or was not excessive. ▮ ''It is clear that in order for an action to be for abuse of process there must be some act additional to the issuance of process, where the party is entitled to such process. An improper motive in obtaining the process is not enough to afford grounds for an action for abuse of process if the latter were regularly issued. This principle is well illustrated by the case of *Pimentel* v. *Houk* (1951) 101 Cal.App.2d 884 [226 P.2d 739]. There the complaint charging abuse of process alleged that the plaintiff, in an action on a promissory note, maliciously and not for the purpose of collecting the alleged debt but for the sole purpose of financially destroying the defendant, caused a writ of attachment to be levied upon the defendant's farming equipment. In the action of the trial court sustaining a demurrer to the complaint without leave to amend, the reviewing court said: 'In the case before us it may be conceded that the allegation that plaintiff caused the attachment to issue without any purpose of collecting the debt but solely for the purpose of destroying defendant financially, may constitute a sufficient allegation of an ulterior purpose; but we are of the opinion that defendant failed to allege use of the process for a purpose not proper in the regular conduct of the proceeding. It was entirely proper in the regular proceeding—to collect the notes sued upon—for plaintiff to resort to an attachment of defendant's assets. . . . On the face of the record plaintiff was fully within his rights in causing the writ of attachment to be issued and served; and the fact that he may have had an ulterior motive to destroy defendant financially did not render the use of the writ one improper in the regular conduct of the proceeding. Had plaintiff attached without malice, the effect would have been the same. ... The opinion in *Hauser* v. *Bartow,* 273 N.Y. 370 [7 N.E.2d 268, 269], states that process must be used for something more than a proper use with a bad motive; that if a party uses it for the immediate use for which it was in-

320

tended, he is ordinarily not liable, notwithstanding a vicious or vindictive motive; that if he uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process.' (Pp. 886, 887.)'' (*Tellefsen* v. *Key System Transit Lines* (1961) 198 Cal.App.2d 611, 613-614 [17 Cal.Rptr. 919].)

■ To constitute abuse of process there must be an abuse in the use to which it is put *after* issuance. If as here, the process is legitimately used, the motive with which it is used becomes immaterial. As said in *Tellefsen* v. *Key System Transit Lines, supra,* at page 614, the effect of the attachment would be the same whether the writ was used with or without malice.

■ As to defendant's employee soliciting business from the owners of the places from which the machines were removed, there is nothing illegal in such solicitation. Defendant had a right to so solicit, just as in *Kyne* v. *Eustice, supra,* 215 Cal.App.2d at page 633, it was held that there was nothing improper in the plaintiff there telephoning to the students listed on the lists obtained on order of examination, to determine whether they were indebted to the debtor.

Plaintiff contends that the situation in *Spellens* v. *Spellens* (1957) 49 Cal.2d 210 [317 P.2d 613], where the court held that the evidence supported a judgment for abuse of process, is similar to that in the case at bench. However, the situation is not the same. Quoting from *Trachina* v. *Arcinas,* 78 Cal. App.2d 522, 525 [178 P.2d 65], the court there said: '' ' ''One who uses legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby.'' ' '' (P. 231.) The court pointed out that the defendant caused a claim and delivery writ to issue and had an automobile which was the ''quasi-community property'' of the parties seized by the sheriff ''for the ulterior purpose of making things difficult for plaintiff so she would drop her main action [divorce]. It was like a threat, not really to obtain possession of the property which he claimed as his own, but to coerce her with regard to the main action.'' As further stated by the court, '' '. . . There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.' '' (Pp. 232-233.)

Nor are the facts in *Tranchina* v. *Arcinas, supra,* 78 Cal. App.2d 522, similar to those in our case. There, after obtain-

ing from the office of Price Administration a certificate authorizing the bringing of an action to remove the Tranchinas from rented premises just purchased by the Arcinas "solely for the purpose of occupancy" by them, the Arcinas in an unlawful detainer action had the Tranchinas removed from the premises by a writ of possession. In the abuse of process action brought by the Tranchinas it was held that the proceedings taken to evict them and their subsequent eviction were not taken and done by the Arcinas "in good faith" or with the intention of occupying the premises themselves but " 'for the purpose of circumventing the rules and regulations of the Office of Price Administration.' " (P. 523.) The court held that the gravamen of the tort of abuse of process was as follows: "The wrong was only done when by the use of the writ of possession defendants evicted plaintiffs from their home, not for the purpose of occupying it themselves as contemplated by the wartime emergency regulations but for an ulterior purpose in circumvention of those regulations. In our view this perversion of the writ of possession to a purpose forbidden by law amounted to an actionable abuse of the process of the court." (Pp. 524-525.) The court further referred to 3 Restatement of Torts, section 682, page 464: "a. The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.' " (*Tranchina* v. *Arcinas, supra,* at p. 525.)

In our case, as we have seen, there was no abuse of process. Defendant used the writ of attachment for the purpose for which such writs are issued, namely, to attach property for a debt due. Nor was there anything improper nor actionable in defendant's refusing to dismiss the attachment unless plaintiff paid the full amount sued for. If plaintiff felt that he did not owe this amount, instead of paying it to defendant to get the attachment released, he could have deposited the money in court, or filed a bond to await the outcome of the action.

Thus, neither the complaint alleged nor the proof showed any cause of action for abuse of process. The complaint does not attempt to set forth a cause of action in malicious prosecution. ■ The basic elements in such an action are (1) favorable termination of the action claimed to be maliciously

brought, (2) lack of probable cause in bringing it, and (3) malice. (See 2 Witkin, Summary of Cal. Law, § 97, p. 1268.) The first requirement is missing in this case. It is neither alleged nor proved that the action terminated favorably to the defendant in the attachment action—plaintiff here.

 The trial court was right in granting a new trial under both the theories upon which it acted. The court had erred in not granting a judgment notwithstanding the verdict as no cause of action was alleged or proved.

The order granting the new trial is affirmed.

Sullivan, J., and Molinari, J., concurred.

A petition for a rehearing was denied July 14, 1964, and appellant's petition for a hearing by the Supreme Court was denied August 27, 1964.